**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0818-18T2

ROSEMARY J. FISHER,

    Plaintiff-Appellant,

v.

YUM YUM BAGEL CAFÉ,
KSAN, LLC, STATE OF NEW
JERSEY, COUNTY OF
BERGEN, and BOROUGH OF
CLIFFSIDE PARK,

    Defendants-Respondents.

_____

Submitted March 4, 2020 – Decided March 23, 2020

Before Judges Whipple, Gooden Brown, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5469-16.

Law Offices of Rosemary Arnold, attorneys for appellant (Natalie A. Zammitti Shaw and William R. Stoltz, on the briefs).

Law Offices of Stephen C. Cahir, attorneys for respondent Borough of Cliffside Park (Stephen C. Cahir, on the brief).

PER CURIAM

Plaintiff Rosemary Fisher appeals from a September 28, 2018 order barring her expert's testimony and the resultant dismissal of her tort claims against defendant Borough of Cliffside Park, related to a slip and fall accident. We affirm.

In 2015, plaintiff traveled to the United States from England to vacation in New York City. She stayed in Cliffside Park. She was seventy-five years old at the time.

On the day of her accident, plaintiff was returning from a visit to New York City and walking down Anderson Avenue toward her residence when her "right foot was caught" on the raised edge surrounding a ramp and she began to fall. She testified she tried to catch herself with her left foot, but there was debris on the ramp, causing her foot to slip. She landed on her left knee and right wrist. Plaintiff was wearing boots with a flat rubber sole and carrying groceries in a bag she described as "fairly heavy."

According to plaintiff, the ramp was "a pink-ish, orange-ish color[] . . . with little pimples on it, but around the ramp was a cement surround," which is the part that caught her foot. The ramp was part of the sidewalk abutting the crosswalk allowing for handicap access to the crosswalk and street. The

building abutting the location of the slip-and-fall is a commercial building owned by KSAN, LLC and rented by a business tenant, Yum Yum Bagel Café.

Plaintiff filed a complaint naming Yum Yum Bagel Café and KSAN, LLC. During discovery, she learned neither of these defendants installed the ramp, and instead Boswell Engineering, the Borough Engineer for Cliffside Park, oversaw the ramp installation. Plaintiff amended her complaint to name the County of Bergen and Cliffside Park as defendants.

Later, a voluntary dismissal without prejudice was entered in favor of Bergen County, and KSAN and plaintiff settled her claims resulting in a dismissal of KSAN from the case. After initial dates for the trial were unsuccessfully set for May 2018 and then June 2018, a final trial date was set for September 18, 2018.

Plaintiff's liability expert was George Gianforcaro, a licensed engineer. He inspected the portion of the sidewalk in question in October and November 2017. He also consulted plaintiff's answers to interrogatories and relied on her account of what happened, which she relayed during one of the site inspections.

During a de bene esse deposition, Forcaro addressed his report, which stated:

> The [c]urb [r]amp is installed diagonally toward the intersecting streets and Anderson Avenue and

Lawton Avenue. The [c]urb [r]amp slopes downward from the high point of the [p]ublic [w]alkway to the [r]oadway [c]urb for Anderson Avenue. The [s]lope of the [r]amp is [one half] inch vertically to every twelve . . . inches horizontally, (the ADA [r]amp requirement is [one] inch vertically to every twelve . . . inches horizontally). The width of the [s]idewalk along Anderson Avenue, at the top of the [c]urb is [nine] feet-[three] inches in width. The width of the [s]idewalk along Lawton Avenue is [nine] feet.

The [c]oncrete [b]order that encompasses the ADA [w]arning [p]ad is [six] inches wide. The ADA [w]arning [p]ad measures [forty-eight] inches wide by [twenty-four and three-fourths] inches long. The [twenty-four and three-fourths] inch dimension is the direction off the downward slope of the [r]amp.

The [t]op [su]rface of the [c]oncrete [b]order was constructed at a higher elevation than the [t]op [s]urface of the [b]rick [p]avers that are constructed adjacent to the [c]oncrete [b]order. The [s]outh[w]est [c]orner of the [c]oncrete [b]order is one . . . inch higher, i.e. [c]hange in [l]evel, than the [a]djacent [b]rick [p]avers. It is at this location, the [c]hange in [l]evel where [plaintiff]'s accident took place.

At the time of my inspection, I inspected similar [c]urb [r]amps/[p]ublic [w]alkways [s]idewalks that are constructed on the [s]outheast [c]orner of Anderson Avenue and Lawton Avenue.

The [c]oncrete [b]order that [e]ncompasses the ADA [w]arning [p]ad, at these two . . . locations, are constructed on an even, level, and uniform place with the [t]op [s]urfaces of the [b]rick [p]avers that are constructed adjacent to the [c]oncrete [b]order.

4

He then concluded:

It is this [e]ngineer's opinion, based on my education, experience, research and inspection and as a [l]icensed [u]niform [c]ode [c]onstruction [c]ode [o]fficial, [b]uilding [s]ubcode [o]fficer and building [i]nspector in the State of New Jersey, that the [p]roperty [o]wners, the [t]enants and/or its [a]gents and the Borough of Cliffside Park, (See Ordinance of the Borough of Cliffside Park, Chapter XXII, Property Maintenance Code; Section 2203, Applicability) and the Borough of Cliffside Park, (See Ordinance of the Borough of Cliffside Park, Chapter XXIII, Streets and Sidewalk; Section 13-1.17; Section 13-1.18 Police Department) did not properly [c]onstruct and did not properly [m]aintain the [p]ublic [s]idewalk, i.e. [c]urb [r]amp, where [plaintiff]'s accident occurred. The [c]oncrete [b]order that encompasses the ADA [w]arning [p]ad has been constructed at a higher elevation than the [b]rick [p]avers created a dangerous hazardous, negligent and palpably unreasonable condition for the person or persons attempting to traverse the [p]ublic [s]idewalk. The [c]oncrete [b]order and the [b]rick [p]avers in the [p]ublic [s]idewalk created a [w]alking [s]urface that is not on a level, even and uniform plane with the adjacent [w]alking [s]urfaces in the [p]ublic [s]idewalk. It is in the [e]ngineer's opinion that this condition has existed for a long period of time. This condition has existed since the [o]riginal [c]onstruction of the [c]urb [r]amp, which is a period of more than two . . . to three . . . years, (See the Ordinance of the Borough of Cliffside Park Chapter XIII, Streets and Sidewalks; Section 13-1.17 Supervision; Section 13-1.18 Police Department). The [b]rick [p]avers and the adjacent [c]oncrete [b]order along the [s]urface of the [p]ublic [s]idewalk not being on a level, even and uniform place is a [c]ode [v]iolation. To [c]ompound the dangerous hazardous,

A-0818-18T2

negligent and palpably unreasonable conditions, the [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park failed to provide a [r]easonably [s]afe [p]ublic [s]idewalk to meet with the [r]equirements of the [c]odes, (See the ordinance of the Borough of Cliffside Park, Chapter XIII, Streets and Sidewalks; Section 13-1.17 Supervision; Section 13-1.18 Police Department, Chapter XXII Property Maintenance Code; Section 22-3 Applicability). The Excessive amount of gravel also indicates a failure to maintain, repair, and/or inspect, which was the responsibility of the [p]roperty [o]wners, the [t]enants and/or its [a]gents and the Borough of Cliffside Park.

. . . .

[A]nd based on a reasonable degree of [e]ngineering certainty, that the proximate cause of [plaintiff]'s accident was due to [b]rick [p]avers and the [c]oncrete [b]order that encompasses the ADA [w]arning [p]ad, not being properly [c]onstructed and not being properly [m]aintained, along with the [l]oose [g]ravel on the [p]ublic [s]idewalk. The [s]ection of the [p]ublic [s]idewalk where [plaintiff]'s accident occurred is where the [b]rick [p]avers are not on a level, even and uniform plane with the adjacent [c]oncrete [s]urface, which [b]orders and encompasses the ADA [w]arning [p]ad, along with the [l]oose [g]ravel on the [p]ublic [s]idewalk cause [her] to trip, stumble, and fall to the ground causing injury to her body. The [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park (See the Ordinance of the Bourough of Cliffside Park, Chapter XXII, Property Maintenance Code; Section 22-3 Applicability) and the Borough of Cliffside Park (See the Ordinance of the Borough of Cliffside Park Chapter X[III], streets and Sidewalks; Section 3:1.17 Supervision; Section 13-1.18 Police Department) knew

6

A-0818-18T2

of should have known that the [b]rick [p]avers and [c]oncrete [b]order was improperly constructed and that this improperly [c]onstructed [w]alkway created a [w]alking [s]urface that is a dangerous hazardous, negligent and palpably unreasonable condition and that this dangerous hazardous, palpably unreasonable condition is the result of improper [c]onstruction and improper [m]aintenance over the past two . . . to three . . . years or longer (See the Ordinance of the Borough of Cliffside Park, Chapter XIII, streets and Sidewalks; Section 13-1.17 Supervisions; and the State of New Jersey Uniform Construction Code; Subchapter 7, barrier Free Subcode; and the International Code Council, ICC/ANSI, A117.1, Accessible and Usable Buildings and Facilities, Chapter 3 Building blocks; Chapter 4 Accessible Routes). The improper [c]onstruction and improper [m]aintenance for the [p]ublic [s]idewalk introduces hazards that create the probability of a trip, stumble and fall down accident, such as [plaintiff]'s accident. The [c]oncrete [b]order for the ADA [w]arning [p]ad being at a higher elevation than the [b]rick [p]avers is not caused by ordinary wear and tear. The [b]rick [p]avers in the [p]ublic [s]idewalk are most likely caused by the improper construction that was performed by the [c]ontractor for the Borough of Cliffside Park's failure to provide a reasonably safe sidewalk. The [p]roperty [o]wners, the [t]enants and/or its [a]gents and the Borough of Cliffside Park did not [p]roperly [m]aintain the [p]ublic [s]idewalks, i.e., the [l]oose [g]ravel on the [s]idewalk and the Borough did not properly [c]onstruct the [p]ublic [s]idewalk, i.e. the [c]urb [r]amp. The [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park allowed the [c]oncrete [b]order which [e]ncompasses the ADA [w]arning [p]ad to be constructed at a higher elevation than the adjacent [b]rick [p]avers, which failed to provide a [r]easonably [s]afe [s]idewalk to

exist at the time of [plaintiff]'s accident, thus causing [her] accident.

. . . .

[I]t should have been foreseeable to the [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park that the [p]ublic [s]idewalk created an uneven walking surface which is in the [p]ublic [w]alking [a]rea. It should have also been foreseeable that the [c]oncrete [b]order for the ADA [w]arning [p]ad in the [p]ublic [s]idewalk being at a higher elevation than the [b]rick [p]avers, along with the [l]oose [g]ravel will create dangerous hazardous, negligent and palpably unreasonable conditions that will cause trips and fall down accidents for a person or persons traversing the [p]ublic [s]idewalk, as in this [c]ase, [plaintiff]'s trip and fall down accident. The [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park could have and should have noticed the [c]oncrete [b]order was at higher elevation than the adjacent [b]rick [p]avers along with the [l]oose [g]ravel on the [s]idewalk long before [plaintiff]'s accident, (See the Ordinances of Borough of Cliffside Park Chapter XIII, Streets and Sidewalks; Section 13-1.17 Supervision; Section 1301.18 Police Department). The [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park could have and should have removed the [b]rick [p]avers and reconstructed the [b]rick [p]avers to the level uniform plane with the [s]urfaces of the [c]oncrete [b]order at the ADA [w]arning [p]ad, long before [plaintiff]'s accident. At a minimum, the [p]roperty [o]wners, the [t]enants, and/or its [a]gents and the Borough of Cliffside Park could have a should have simply constructed the [c]oncrete [b]order at this location similar to the [c]oncrete [b]order at the other two locations which has been properly constructed.

A-0818-18T2

On July 21, 2018, defendant filed a motion to bar Gianforcaro from testifying and for summary judgment. The motion was denied as untimely.

On the first day of trial, defendant filed a motion in limine, renewing its motion to bar the expert testimony. Defendant's trial memorandum contained similar arguments as in the motion. The trial judge granted the motion in limine.

During the trial, plaintiff testified regarding her recollection of the fall. Plaintiff called Ann Daniels, who was at the scene that day and stated she did not see the accident. Plaintiff also called Naham Barouk, the principal of the entity that owned the property abutting the sidewalk near the accident, and John Englese, an employee of Boswell Engineering. At the close of plaintiff's case, the trial judge granted defendant's motion for judgment dismissing plaintiff's claims against defendant.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court. As a discovery determination, a trial court's grant or denial of a motion to strike expert testimony is entitled to deference on appellate review." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (internal citations omitted). Where we are asked to review a motion for an involuntary dismissal, we apply the standard applied by the trial court. Sickles v. Cabot Corp., 379

N.J. Super. 100, 106 (2005). Therefore, our review is de novo. <u>C.W. Cooper</u>

<u>Health Sys.</u>, 388 N.J. Super. 42, 57 (App. Div. 2006).

Plaintiff argues the trial judge erred in barring Gianforcaro on grounds of

net opinion. She contends the judge's decision prevented her from raising other

triable issues of fact as to defendant's liability. She argues defendant's in limine

motion was untimely and a repeat of the motion for summary judgment which

was previously denied.

> Although a trial judge "retains the discretion, in appropriate cases, to rule on the admissibility of evidence pre-trial," . . . we have cautioned that "[r]equests for such rulings should be granted only sparingly." This is particularly true when the "motion in limine" seeks the exclusion of an expert's testimony, an objective that has the concomitant effect of rendering a plaintiff's claim futile.
>
> . . . It is not a summary judgment motion that happens to be filed on the eve of trial. When granting a motion will result in the dismissal of a plaintiff's case or the suppression of a defendant's defenses, the motion is subject to <u>Rule</u> 4:46, the rule that governs summary judgment motions.
>
> [<u>Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr.</u>, 443 N.J. Super. 461, 470-71 (App. Div. 2015) (internal citations omitted).]

<u>Rule</u> 4:46-1 states in pertinent part:

> All motions for summary judgment shall be returnable no later than [thirty] days before the scheduled trial

10

date, unless the court otherwise orders for good cause shown, and if the decision is not communicated to the parties at least [ten] days prior to the scheduled trial date, an application for adjournment shall be liberally granted.

Our concern for adherence to the temporal nature of motions in limine is so as not to deprive the party defending the motion of due process. Cho, 443 N.J. Super. at 473-74. However, due process is not a fixed concept mandating that rigid requirements must be met in every case, but rather "the time requirements for the filing and decision of summary judgment motions provide a useful background for assessing whether plaintiffs had an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid.

In Cho, the defendant filed a motion in limine on the eve of trial, seeking dismissal of the plaintiff's claims based on the prior barring of plaintiff's expert, which the judge granted. Id. at 465-67. We reversed and held

> our commitment to the fair administration of justice demands that we protect a litigant's right to proceed to trial when he or she has not been afforded the opportunity to respond to dispositive motions at a meaningful time and in a meaningful manner. We therefore hold that the resulting dismissal of a complaint deprives a plaintiff of due process of law.
>
> [Id. at 474-75.]

The facts here differ from Cho because defendant filed an initial motion for summary judgment before the trial, and the in limine motion was the same motion. Therefore, despite the lack of timeliness, plaintiff was not deprived of due process having previously seen and contested the contents of defendant's motion.

Moreover, we disagree with plaintiff's argument that an adjournment of the motion would yield a different result. Discovery closed and plaintiff was bound to her expert's opinion, which was clearly a net opinion and fatal to her ability to present a theory on liability.

An expert must be able to "identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual basis and methodology are reliable." Townsend, 221 N.J. at 55 (internal citation and quotations omitted). An expert's opinion will be "excluded if it is based merely on unfounded speculation and unqualified possibilities." Ibid. (internal citations and quotations omitted).

Here, Gianforcaro opined that: (1) defendant was negligent in the construction of the sidewalk where plaintiff fell; (2) the sidewalk was dangerous since its construction; (3) defendant was on notice of the dangerous condition; and (4) the sidewalk's condition was palpably unreasonable. However, his

12

conclusions were unfounded because he failed to demonstrate defendant had actual or constructive notice of the sidewalk's condition, and defendant's construction of the sidewalk or failure to maintain it was palpably unreasonable. To vault the threshold of a net opinion, Gianforcaro needed to do more than recite the measurements of the sidewalk and summarily conclude defendant created and ignored the alleged dangerous condition. The trial judge did not abuse his discretion when he barred Gianforcaro's net opinion.

Nor did the judge err in granting defendant's motion for judgment pursuant to Rule 4:40-1.

> In the case of motions for involuntary dismissal, the test is, as set forth in R[ule] 4:37-2(b) and equally applicable to motions for judgment [under Rule 4:40-1], whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor" of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion.
>
> [Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969) (internal citations omitted).]

Pursuant to the Torts Claims Act (TCA), specifically N.J.S.A. 59:4-2,

> [a] public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

A public entity must have actual or constructive notice, meaning actual knowledge of the dangerous condition, or should have known of the dangerous condition; or if plaintiff proves the condition lasted for such a period of time and was of such an obvious nature that the public entity "in the exercise of due care, should have discovered the condition . . . ." N.J.S.A. 59:4-3. Under the TCA, "palpably unreasonable" implies a behavior which is "patently unacceptable under any given circumstance." Kolitch v. Lindedahl, 100 N.J.

485, 493 (1985). More than negligence is required, and instead an "obvious and manifest breach of duty [is required] and imposes a more onerous burden on the plaintiff." Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979).

Plaintiff did not meet the elements under the TCA. Gianforcaro examined the property over two years after the accident. He offered no basis for his opinion that the sidewalk was a dangerous condition at the time of the fall. Plaintiff testified the photo of the sidewalk accurately depicted it at the time of her fall, but also stated she was in and out of consciousness following the fall. The other witnesses did not see plaintiff's fall in order to shed any light on the condition of the sidewalk at the time of her fall. No evidence supported plaintiff's argument the uneven portion of the sidewalk existed at the time of her fall.

Regarding the issue of notice, Gianforcaro concluded the dangerous portion of the sidewalk existed since its construction. However, he provided no factual basis for this conclusion. His opinion also lacked any basis to conclude defendant knew or should have known of the alleged dangerous condition. Absent from the record is any evidence of complaints regarding the sidewalk, other accidents occurring at that location, or notice to defendant of a defect in the sidewalk.

In the absence of notice, a public entity's conduct cannot reach the palpably unreasonable standard. See Maslo v. City of Jersey City, 346 N.J. Super. 346, 349-51 (App. Div. 2002) (holding given the absence of notice, among other factors, no rational fact finder could resolve the question of palpable unreasonableness in favor of the plaintiff). Plaintiff did not demonstrate defendant acted palpably unreasonably because she failed to prove defendant had notice of the alleged condition of the sidewalk.

Given these circumstances, granting the Rule 4:40-1 motion where there was no showing plaintiff was deprived of due process was an appropriate exercise of discretion. See Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 142 (2013) (holding "[t]he gatekeeping function . . . assigned to [a] judge [where a party alleges net opinion is] specifically to screen the jury from hearing mere speculation.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0818-18T2