**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0781-22

SUPREME ELASTIC CORP.,

     Plaintiff-Appellant,

v.

WALTER SCHULEIN, and
UNIVERSAL INDUSTRIAL
SUPPLY, INC.,

     Defendants-Respondents.

_____

Submitted December 12, 2023 – Decided February 9, 2024

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000056-19.

Kates Nussman Ellis Farhi & Earle, LLP, attorneys for appellant (Michael B. Farhi and Sandra M. Barsoum, on the briefs).

Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, attorneys for respondent Walter Schulein (James E. Stahl and John J. DeLuca, Jr., of counsel and on the brief).

Lindabury, McCormick, Estabrook & Cooper, PC, attorneys for respondent Universal Industrial Supply, Inc. (Steven L. Fox, of counsel and on the brief).

PER CURIAM

Plaintiff Supreme Elastic Corp. (Supreme) appeals from the October 7, and November 14, 2022 orders granting summary judgment to defendant Universal Industrial Supply, Inc., (UIS) and defendant Walter Schulein, respectively. We affirm.

I.

We glean the following facts from the motion record. Supreme is a textile manufacturer specializing in yarn and fabrics that can be used to create personal protective equipment (PPE). UIS distributes gloves and safety products to multiple entities. Schulein worked for Supreme between 2005 and 2019, and briefly worked for UIS after separating from Supreme. According to Schulein, Supreme hired him "to initiate [its] Tuff[-]N[-]Lite line of [PPE], which [wa]s . . . primarily used by glass manufacturers."

Schulein considered himself "an expert in knitted textiles," "hav[ing] worked in [the] industry for several decades." In his role as Supreme's Northeast Marketing Manager, his duties included servicing existing accounts, locating new accounts, and identifying new clients and markets for plaintiff's products.

When Supreme hired Schulein, he signed the corporation's employee handbook. Section 5.11 of the handbook, entitled "Confidential Company Information," stated, in part:

> any employee who improperly copies, removes (whether physically or electronically), uses[,] or discloses confidential information to anyone outside of the [c]ompany may be subject to disciplinary action up to and including termination. Employees may be required to sign an agreement reiterating these obligations.

According to Supreme, its employees also were required to sign a non-disclosure agreement (NDA). Schulein testified during his deposition that "[he] had to sign something" when Supreme hired him and it "may have been a[n NDA]." However, prior to the entry of the October 7 and November 14, 2022 orders, Supreme failed to produce any NDA signed by Schulein.

In 2015, while Schulein was still employed at Supreme, Supreme and UIS entered into a Distribution and Representation Agreement (Agreement), under which UIS agreed to distribute and sell certain safety and clothing products offered by Supreme, such as goods from Supreme's "Tuff-N-Lite," "Lite-N-Lite," and "Micro-Texpur" lines. Supreme terminated the Agreement in 2017, alleging UIS breached its terms, including representing competing products. UIS denied Supreme's allegations and accused Supreme of violating the

3 <span>A-0781-22</span>

Agreement by "contact[ing UIS]'s customers and disclos[ing] confidential information, including pricing," to "gain a commercial advantage for Supreme."

On February 24, 2019, Schulein forwarded an email from his Supreme email account to his personal email account which contained a folder of files from Supreme, including various sales reports. He did not notify Supreme of his actions. According to Supreme, Schulein

> uploaded over 150 files from his Supreme laptop computer onto an external hard drive that contained confidential and proprietary information[,] including but not limited to patent information, design information, pricing tiers, profit margins, customer contact information, customer lists, marketing plans, customer leads, product design information, profit margins, and sales data.

Schulein later admitted to downloading files from his work email "to a personal hard drive," but claimed he "did this to protect [him]self in the event Supreme alleged [his] performance was insufficient and gave [him] too small of a bonus or fired [him], as they did to [his] former co[-]worker." Additionally, Schulein stated "Supreme's accounting department initially emailed [him] the documents . . . so [he] could keep track of customer sales and ensure that each customer was in the proper pricing tier." He also asserted Supreme's "accounting department emailed [its] salespeople an updated spreadsheet every month" and "[n]one of these documents, nor the emails the accounting

4

department sent them in, were marked confidential in any way[,] to [his] knowledge."

Schulein resigned from Supreme two days after he downloaded Supreme's files and transferred them to his personal hard drive. The same day he resigned, Supreme's CEO sent an email terminating him. Supreme's CEO also asked him to return his company car, a 2016 Toyota Camry, to Supreme's headquarters in North Carolina. After consulting with an attorney, Schulein left his company car in front of his house. Schulein's attorney notified Supreme that the company car could be retrieved with all other company property inside the vehicle. Schulein's counsel further informed Supreme the company car would be left at a nearby airport if not retrieved from the front of Schulein's home.

Approximately three weeks after Schulein separated from Supreme, he spoke with UIS's CEO, informing the CEO Schulein no longer worked for Supreme. After meeting with UIS's president and CEO in April 2019, Schulein was offered employment and began working for UIS.

Shortly before Schulein accepted UIS's job offer, Supreme filed a complaint against Schulein. In September 2019, Supreme amended its complaint to name UIS as an additional defendant. In its twelve-count amended complaint against defendants, Supreme asserted claims for: (1) injunctive relief;

5

(2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) interference with contractual relations; (5) breach of fiduciary duty; (6) breach of the duty of loyalty; (7) tortious interference with prospective economic gain; (8) conversion; (9) misappropriation of trade secrets and conspiracy to convert trade secrets; (10) violation of the Computer Fraud Abuse Act, 18 U.S.C. § 1030; (11) violation of the Computer Related Offenses Act, N.J.S.A. 2A:38A-1 to -6; and (12) unfair competition. Some counts of the amended complaint, including counts two, five, and six, were lodged only against Schulein.

In 2020, the trial court appointed Richard Shaklee, a Special Discovery Master, to facilitate the discovery process. Two years later, after the parties exchanged discovery, UIS filed a motion for summary judgment against Supreme; Supreme opposed the motion.

On June 10, 2022, Judge Francis R. Hodgson, Jr. heard argument on the motion. As the judge began to address individual counts of Supreme's amended complaint, the judge informed Supreme's counsel that Supreme would need "to prove . . . [Schulein] used [Supreme's] information to unfairly compete," and Supreme "lost . . . business from . . . companies that he solicited." The judge asked what testimony Supreme could elicit at trial "to prove that [Schulein]

6

accessed or used this information to [Supreme's] detriment," understanding it was Supreme's "obligation . . . to come forward with [its] case."

In response to the defense's argument that "there was not a separate document at any time signed by Schulein that prohibited [him] from competing," the judge told Supreme's counsel, "I don't know any . . . case law that says that a party can use a . . . written agreement against someone that they can't produce[,] and they can't tell me what's in it. Let alone . . . that the person should be on notice to be found to violate it." The judge added that even if Schulein worked for a competitor,

> [w]ithout a non-compete and without a[n NDA], a [seventy]-year old salesman is permitted to quit one job and go work for somebody else. And, in fact, is even permitted to go solicit his former customers without a non-compete or [NDA,] as long [as] he doesn't violate duties of loyalty.

Judge Hodgson further questioned Supreme's allegation under the seventh count of the amended complaint, i.e., defendants engaged in tortious interference with Supreme's prospective economic gain. He told Supreme's counsel,

> I don't think [you] can make your case . . . unless you show . . . [Schulein] was using something he shouldn't have been able to use. I don't see any evidence where that was done. . . .

7

> . . . New employers aren't . . . liable for what the employee does if they don't know about it. . . . You have to show me something that says that [UIS] . . . should have known about it, because that's the test[.]

Further, the judge stated Supreme needed to demonstrate that what Schulein downloaded was confidential, and "what steps [Supreme] took to protect the information" at issue. Next, the judge stated he "need[ed] to know what [Supreme's] damages were." In summarizing his concerns, the judge remarked, "I guess [those are] the two main things[:] the damages and the steps [Supreme] took to protect [its] information. I'm going to need those things in order to finalize a decision in this matter."

Before the hearing concluded, Schulein's counsel informed the court he would "now . . . move for . . . summary judgment," having had the benefit of hearing the discussion between the judge and counsel. When the judge asked why Schulein would not simply "join" UIS's motion, Supreme's counsel objected, arguing Schulein joining UIS's motion would not be "fair" because certain "counts against [Schulein] . . . ha[d not] been briefed." The judge replied:

> [Y]ou'll recall . . . earlier . . . when I started going through . . . those first few counts—the contract counts, I needed to address those in the context of the counts against UIS . . . . And so, I . . . basically gave an indication of where we're going with those . . .

8

counts . . . . If [Schulein's counsel] wants to add something else, [and address] the conversion count[,] for instance, if he wants to . . . join the motion and also add . . . something on the conversion count or . . . other counts, where he is alone [on the count,] . . . he could do that.

But [Supreme's counsel] is right. . . . I'm not going to decide those [counts pertaining only to Schulein] without [giving Supreme's counsel] . . . an opportunity to respond.

After Schulein's counsel stated he would "do [his] own work" on "counts that are only against Schulein," and would only "amplify or provide additional information" he felt necessary regarding counts of the amended complaint where Schulein was "joined in with [UIS]," Supreme's counsel stated, "in the interest of fairness and procedure," "if [Schulein's counsel is] going to make his own motion, he should[ not] bootstrap onto [UIS's motion]. I should have a chance to oppose it."

The judge agreed, acknowledged defendants also would be given the opportunity to reply to Supreme's supplemental admissions, and told Supreme's counsel that "in the meantime," the court expected Supreme's counsel would "be thinking about all the questions [the judge] had and [would] come back [to court] a little bit [more] prepared next time, . . . to answer [the judge's] questions." Supreme's counsel replied, "Fair enough, Your Honor."

9

In August 2022, after Supreme submitted additional certifications and exhibits to the court in opposition to the summary judgment motion, Schulein's counsel wrote to Judge Hodgson, with a copy to counsel, advising Schulein would be "adopt[ing] all of the arguments of . . . [UIS], with respect to the pending [s]ummary [j]udgment matter" and "[r]equest[ing] . . . [s]ummary [j]udgment as to those specific [counts in the amended complaint] addressed solely to the alleged conduct of Schulein." Schulein's counsel also stated Schulein "adopt[ed] the responses," and "join[ed] in the application of UIS for [s]ummary [j]udgment."

In the same letter, Schulein's attorney argued that "[w]ith respect to the confidentiality and the protection afforded the material" Schulein downloaded, it "was available to [Supreme's a]ccounting [d]epartment, other sales personnel and to . . . Schulein"; Supreme did not "protect the information"; and "the information was provided to . . . Schulein in an unsolicited manner." Additionally, Schulein's attorney stated Schulein did not disclose "the alleged pirated information" "to any person or entity." Further, counsel argued Supreme submitted "no evidence to support any [of its] claim[s] for damages."

Finally, Schulein's counsel submitted Schulein's August 12, 2022 certification with his letter. In the certification, Schulein stated he "did not show

10

anyone at UIS the documents [he] downloaded [from his Supreme account] to [his] personal hard drives, nor did [he] access th[o]se documents once [he] began employment with UIS." Schulein also certified he saved the information he retrieved "to an external drive for [his] attorney to review in preparation for litigation." Further, Schulein stated some of the names of potential clients he recommended to UIS were clients he "remembered working with while employed with Supreme," but "through research," he also identified other potential clients for UIS who, "to [his] knowledge, . . . never worked with Supreme."

Supreme's counsel subsequently wrote to Judge Hodgson, objecting to the court considering Schulein's certification or allowing Schulein to "adopt" UIS's arguments, claiming Schulein's submissions were "extremely prejudicial" and "violative of the Rules of Court."

The parties appeared before Judge Hodgson for additional argument on October 7, 2022. At the outset of the hearing, the judge announced Schulein "ha[d] joined th[e] motion." The judge then permitted Schulein's attorney and counsel for the other parties to state their positions on the pending motion.

As argument progressed, the judge concluded "there would be no . . . foundation for [Supreme's] complaint had" Schulein not downloaded

11

information from Supreme, which "raise[d] the issue of what impact the download ha[d] on . . . th[e] case." Thus, the judge stated he would decide whether the material Schulein downloaded was "protectable," "whether that protectable information was used, and if it was used, whether [there were] damages."

Next, recognizing Supreme "conceded . . . [counts one, ten, and eleven] of the amended complaint" "should be dismissed as . . . moot," the judge addressed the remaining counts of the complaint. He noted the foundation of Supreme's complaint rested on "four basic allegations," specifically: (1) "[Schulein] downloaded and transmitted information to himself prior to his resignation"; (2) "the information downloaded and transmitted constituted trade secrets, confidential and proprietary information"; (3) Schulein "shared this information with UIS"; and (4) "defendants used this information to unfairly compete with plaintiff."

Against this backdrop, the judge referenced count two of Supreme's complaint—breach of contract—and found Supreme never produced an NDA signed by Schulein, and "[t]here was no competent evidence . . . the parties established essential terms [of a contract or] that the terms were breached." In that vein, the judge found "the employee handbook signed by [Schulein] . . .

contain[ed] a prominent disclaimer [that the handbook] d[id] not constitute a contract," but even if Schulein violated a provision in the handbook that stated "company finances, pricing, products, product development, . . . marketing strategies, suppliers and . . . essential customers would remain confidential," any "penalty for downloading" this information, "up to and including termination," "no longer applie[d]" to Schulein once he resigned or was terminated by Supreme.

Judge Hodgson further found "there [wa]s no competent evidence of disclosure" of the downloaded material by Schulein. The judge stated Supreme's "evidence show[ed Schulein] accessed the download[ed information] two times[,] both after the litigation began and before his employment with UIS. There is no competent evidence in the record that [Schulein] shared the documents with anyone . . . other than his lawyer." Moreover, the judge found that even if Schulein identified customers UIS could call after Schulein began working for UIS, the identities of glass purchasers were "publicly available," so Supreme failed to show Schulein improperly identified potential customers. Accordingly, the judge dismissed count two of the amended complaint.

Regarding count three—breach of covenant of good faith and fair dealing—the judge found "the covenants d[id] not apply because neither

13

[defendant was] subject to a contract." He explained, "[n]o contract [was] presented as to [Schulein,] and the parties . . . agreed that the . . . [A]greement between . . . Supreme and UIS [wa]s no lon[g]er in effect."

As to count four of the complaint—interference with contractual relations—Judge Hodgson stated,

> [Supreme] allege[d] [Schulein] used confidential information to sell PPE to [Supreme]'s customers. Critically, [Supreme] and its alleged customers were not operating under any contract[; customers] were really buying goods from [Supreme] as needed, as a so-called purchase order[-]to[-]purchase order arrangement working under the Uniform Commercial Code. . . . [T]his lack of contract [defeats] this claim.

Next, the judge collectively addressed counts five and six, whereby Supreme alleged Schulein breached his fiduciary duty and his duty of loyalty to Supreme by downloading and transferring confidential information to himself while employed by Supreme. The judge rejected these claims, stating,

> in the absence of [a] covenant not to compete after termination of employment, an employee may anticipate the future termination of his employment and[,] while still employed[,] make arrangements for some new employment by a competitor [or] the establishment of his own business in competition with the employer. The only restriction to such action is that he may not solicit his employer's customers for his own benefit before he gets terminated [from] his employment, nor may he do so through other similar

14

actions in direct competition with the employer's business.

The judge also acknowledged that shortly before Schulein separated from Supreme, he "saved information originating from his employer" and "emailed . . . information . . . to himself," which "included patterns, sales data, customer contact information, and price lists."  However, the judge stated, "there is no competent evidence that [the] information downloaded was confidential or that it was used by [Schulein] . . . to gain a competitive advantage."  Instead, the judge found the evidence showed Schulein "downloaded this information for his own protection . . . after he left the company," believing "Supreme was litigious, . . . [and] that Supreme m[ight] contest his performance once he left . . . and deny him what they owed [him]."  Further, the judge reiterated "[t]he evidence showed that the downloaded material was only accessed two times after litigation began and prior to [Schulein's] employment with UIS," "to preserve the information for his lawyer."

Additionally, the judge found "[t]he totality of the evidence provided by Supreme supporting the misuse of the transferred information was that [Supreme] was contacted by . . . some of its customers who stated . . . [Schulein] was soliciting them with Supreme['s] profit and sales information and that names of [Supreme's] customers were listed in an email to UIS."  But the judge

15

concluded that after Supreme received this report, "the specific contacts . . . who allegedly relayed the information [that Schulein solicited them] could not be identified in discovery, nor could [the] complaining customers who made these allegations."

The judge also found that because the case involved "an industry where glass manufacturers and those individuals who could use this type of material are available publicly," the names of customers were "available publicly on the internet." And considering Schulein "worked in this business for [fifty] years," the judge determined Schulein "kn[e]w the individuals who worked in the glass business and . . . need[ed] . . . protective equipment." Moreover, the judge concluded Schulein "was not prevented from taking information that he[] learned during the course of his career . . . and using it subsequently," given "there[ was] no non-solicitation and no non-compete clause . . . presented [by Supreme] in this case."

Next, the judge found "no evidence in the record that Supreme was harmed by the transferred information." He reasoned that although Supreme "assert[ed it suffered] a reduction in gross sales attributable to [Schulein]," Supreme failed to "prov[e] any nexus between" a loss of its former customers and Schulein working for UIS. The judge also stated, "there's no indication by any expert as

16

to what [caused] the reduction[]" in Supreme's sales. "It could be . . . [due] to COVID. There is no evidence that [Supreme] lost customers or sales[,] or potential sales[,] that were in progress as a result of defendant[s'] conduct."

Regarding count seven—tortious interference with prospective economic gain—the judge stated,

> [t]o prove this cause of action[,] a plaintiff must establish that there was some reasonable expectation of economic advantage[,] that the defendants interfered with this expectation intentionally and without justification or excuse, that absent this interference, there was a reasonable probability that plaintiff would have received the anticipated benefit[,] and that the plaintiff was damaged thereby. . . .
>
> . . . .
>
> A new employer will not face liability for an employee's use of a prior employer's trade secrets unless the new employer is aware or had reason to know that the employee was using proprietary information.

Based on these standards, the judge explained Supreme could not prevail on this count unless it "prove[d] that but for . . . defendant[s'] wrongful actions, it [wa]s reasonably probable . . . Supreme would have entered into a particular future contractual relationship with [an] identified customer." He concluded, "[a]lthough there [wa]s evidence that [Schulein] removed computer data from Supreme, there [wa]s no evidence [Schulein] used the information or that its

purported use damaged Supreme.  Moreover, there [wa]s no evidence that the subject downloads should [have been] treated as trade secrets."

Turning to count eight—conversion—the judge acknowledged conversion was defined as "the wrongful exercise of dominion or control over property owned by another inconsistent with that owner's rights."  He found Schulein decided not to return a company car to North Carolina, but instead, worked with his attorney to "mak[e] it available in New Jersey at a New Jersey airport at [Supreme's] request."  The judge characterized this incident as a "business disagreement," versus Schulein exercising "control over [Supreme's] property" to such a degree that his conduct "g[a]ve rise to the claim of conversion."

In addressing count nine—misappropriation of trade secrets and conspiracy to convert trade secrets—Judge Hodgson referred to the New Jersey Trade Secrets Act (Act), N.J.S.A. 56:15-1 to -9.  Quoting N.J.S.A. 56:15-2, he explained a trade secret is defined as

> information held by one or more people[,] . . .including a formula, pattern, business data, . . . or process that derives independent economic value . . . from not being generally known to, and not being readily ascertainable . . . by[,] [an]other person who can obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonabl[e] under the . . . circumstances to maintain its secrecy.

A-0781-22

The judge concluded the information Schulein downloaded did not meet the statutory definition of a trade secret. The judge explained the "prices paid by customers [we]re known to the sales[]people and [we]re on the invoices." Also, the judge found potential "customers [we]re easily identified" because "[t]hey're glass manufacturers."

Additionally, the judge noted that for Supreme to prevail on this count, it would have to show not only that a trade secret existed, but

> that information comprising the trade secret was communicated in confidence[,] . . . that the secret information was disclosed by [Schulein] in breach of that confidence, that the secret information was acquired by a competitor with knowledge of the . . . breach of confidence and that the secret information was used by the competitor to the detriment of [Supreme], and finally[,] that [Supreme] took precautions to [ensure] the secrets remain[ed] secret.

Judge Hodgson found even if Supreme established the information Schulein downloaded constituted trade secrets, which it did not, Supreme "did not establish that its sales information and price tiering w[ere] the subject of efforts that were . . . reasonable under the circumstances to maintain the secret." The judge found the prices Supreme charged to its customers,

> were obtainable and indeed were obtained simply by asking [a] customer what they were paying for the PPE. Further, the identity of public companies and the contact person for those companies [we]re either

19

known to [Schulein] through his years of work experience or obtainable through the internet. Similarly, [Schulein]'s understanding of the materials used in manufacturing at Supreme were learned through years of experience as a sales[]person, and . . . even before that. It is evident . . . from his deposition that he knows the product.

Finally, regarding count twelve—unfair competition—based on defendants' alleged "wrongful misappropriation of [Supreme's] trade secrets and proprietary and confidential information," Judge Hodgson stated he "previously addressed the issues with regard to . . . [Supreme's] ability . . . to claim [its] property as protected." As "the same analysis applie[d] to" count twelve, the judge concluded that count, too, would be dismissed.

Accordingly, Judge Hodgson entered an order on October 7, granting UIS's summary judgment motion and dismissing Supreme's amended complaint, but only "as against [UIS]." The entry of summary judgment solely in UIS's favor prompted Schulein's attorney to ask the court for dismissal of Supreme's amended complaint as to his client.

On November 14, 2022, Judge Hodgson wrote to counsel for the parties, stating:

I have reviewed the correspondence concerning [Supreme]'s dispute as to whether defendant, Walter Schulein, was a part of the recently heard summary judgment—he was. Schulein participated in both

20

hearings and provided formal notice on August 12, 2022, that he was joining and adopting the arguments of defendant, UIS. Plaintiff replied and objected to the submission on August 17, 2022. During the October 7, 2022, hearing[,] this [c]ourt addressed the issue at approximately 9:29 [a.m.], stating that Schulein had joined. Finally, there was no prejudice to any party[.] UIS's statement of facts and arguments were simply adopted by Schulein, which were addressed by the [c]ourt at both the June and October [2022] hearings.

## II.

On appeal, Supreme raises various overlapping arguments, contending the trial court erred by: (1) "granting summary judgment to . . . Schulein[] without a proper application" and "deciding issues that were outside of the summary judgment motion[,] without affording [Supreme] . . . notice and an opportunity to be heard"; (2) "ignor[ing] credible evidence" and "assum[ing] the role of factfinder in granting summary judgment in favor of defendants," without "mak[ing] all inferences in favor of [Supreme,] as required under R[ule] 4:46-2(c)"; and (3) granting defendants summary judgment, even though they were not entitled to this relief "as a matter of law." These arguments are unavailing.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 549 (2022) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). Summary judgment must be granted "if the pleadings, depositions,

21

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 935 (App. Div. 2007)), overruled in part on other grounds, Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 563 (2012). "[A]n issue of [material fact] is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (quoting R. 4:46-2(c)).

A party does not create a genuine issue of fact simply by offering a sworn statement. Carroll v. N.J. Transit, 366 N.J. Super. 380, 388 (App. Div. 2004). Also, "'conclusory and self-serving assertions' in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009) (quoting Puder v. Buechel, 183 N.J. 428, 440 (2005)).

"A party cannot defeat a motion for summary judgment merely by submitting an expert's report in [their] favor," but rather, the expert's report must create a genuine issue of material fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 544 (1995). Moreover, an expert's opinion must be grounded in facts or data, not just "a mere conclusion." Townsend v. Pierre, 221 N.J. 36, 54 (2015) (citations omitted).

"Competent opposition requires 'competent evidential material' beyond mere 'speculation.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman, 404 N.J. Super. at 426). "[F]acts which are immaterial or of an insubstantial nature, . . . fanciful, frivolous, gauzy[,] or merely suspicious," are insufficient to create a genuine issue of material fact. Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (quoting Brill, 142 N.J. at 529) (internal quotations omitted).

In addressing a summary judgment motion, the trial court "must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case [was] tried." Ibid. Accordingly, "neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat, 217 N.J. at 38.

23

Rule 4:46-1 provides that a motion for summary judgment "shall be returnable no later than 30 days before the scheduled trial date, unless the court otherwise orders for good cause shown." The Rule does not establish time requirements "that must be met in every case for due process demands to be satisfied." Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 474 (App. Div. 2015). Instead, the time requirements "provide a useful background for assessing whether [the party opposing the motion] had an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid.

A trial court "should assure itself that the parties have had a reasonable opportunity to obtain and submit material information to the court" before granting summary judgment. Ziegelheim v. Apollo, 128 N.J. 250, 264 (1992). "Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances." Doe v. Poritz, 142 N.J. 1, 106 (1995).

Next, it is well settled that employees owe an "undivided loyalty" to their employers "while [they are] still employed." Auxton Comput. Enters., Inc. v. Parker, 174 N.J. Super. 418, 423-24 (App. Div. 1980). As Judge Hodgson recognized during the October 7 hearing, if an employee is not subject to a non-compete agreement, that employee

> may anticipate the future termination of [their] employment and[,] while still employed[,] make

A-0781-22

arrangements for some new employment by a competitor . . . . The only restriction to such action is that [the employee] may not solicit [the] employer's customers for [the employee's] own benefit before [the employee has] terminated [their] employment . . . . This would constitute a breach of the [undivided] loyalty which the employee owes to [the] employer while . . . still employed.

Guided by these standards, we discern no basis to disturb either challenged order. We add the following comments.

Initially, Supreme argues it did not have notice or an opportunity to be heard before Judge Hodgson decided issues "outside of [UIS's] summary judgment motion" and before the judge dismissed Supreme's complaint as to Schulein. Such contentions are belied by the record. In fact, the record shows Supreme was on notice as of the June 10, 2022 hearing that Schulein intended to join in UIS's application and the judge permitted him to do so over Supreme's objection. However, the judge also stated, "[Supreme's counsel] is right. . . . I'm not going to decide those [counts pertaining only to Schulein] without [giving Supreme's counsel] . . . an opportunity to respond." Judge Hodgson then adjourned the June 10 hearing to allow Supreme more time to address the concerns the judge outlined at that hearing, including Supreme's ability to prove its allegations against defendants, and that it suffered damages due to their actions. In fact, the judge stated during the June 10 hearing:

25

I need . . . more context with damages. . . . [B]ecause I have the understanding [Supreme is] . . . circumstantially arguing that [Schulein] used the [alleged confidential] information [he downloaded] . . . . to unfairly compete[.] I'm going to want . . . evidence. . . . [Y]ou're going to have to show me . . . he left and the next year[,] . . . this is what [Supreme] lost in business from . . . companies . . . he solicited.

As mentioned, the judge did not resume argument until October 7, 2022, at which time he permitted Supreme to further argue the merits of its case and address defendants' additional submissions. Under these circumstances, Supreme was not deprived of notice or an opportunity to be heard before the judge dismissed its amended complaint against defendants.

We also reject Supreme's argument the judge failed to draw all reasonable inferences in its favor before granting summary judgment to defendants. In fact, the record shows the judge was aware the parties engaged in extensive discovery, including depositions and the exchange of expert reports, and had the benefit of a special discovery master. Yet more than three years after Supreme filed its amended complaint, it never produced an NDA, a non-solicitation, or a non-compete agreement signed by Schulein. It also failed to establish the material Schulein downloaded from his Supreme email account and transferred to his personal account was confidential, or that he shared it with UIS.

26

Therefore, we have no reason to disturb Judge Hodgson's findings that "[t]here [was] no evidence . . . [Supreme] lost customers or sales or potential sales that were in progress as a result of defendant[s'] conduct," and "[t]he totality of the evidence provided by Supreme supporting the misuse of the transferred information was that it was contacted by . . . some of its customers who stated that [Schulein] was soliciting them," yet "the specific contacts . . . who allegedly relayed the information [that Schulein contacted them using Supreme's downloaded information] could not be identified in discovery, nor could [the] . . . customers who made these allegations." Accordingly, we discern no error in the judge's decision to award summary judgment to defendants.

To the extent we have not addressed Supreme's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0781-22