NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5923-13T2

SEOUNG OUK CHO, deceased,
by his administrator,
YUNJIN JO, YUNJIN JO,
YOUNG HO JO, and HANNAH CUI,

    Plaintiffs-Appellants,

v.

TRINITAS REGIONAL MEDICAL
CENTER and NJ HEART,

    Defendants,

and

JOHN HAN SHAO, M.D., GARDEN
STATE CARDIOVASCULAR SPECIALISTS,
EDWARD G. WILLIAMS, M.D., and
HYEUN PARK, M.D.,

    Defendants-Respondents.

<div style="border:1px solid">

**APPROVED FOR PUBLICATION**

**December 30, 2015**

**APPELLATE DIVISION**

</div>

_____

Argued November 17, 2015 — Decided December 30, 2015

Before Judges Fisher, Espinosa and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-104-11.

Michael S. Kimm argued the cause for appellants (Kimm Law Firm, attorneys; Mr. Kimm and Sung H. Jang, on the briefs).

Jason M. Altschul argued the cause for respondents John Han Shao, M.D. and Garden

State Cardiovascular Specialists (Krompier & Tamn, L.L.C., attorneys; Richard J. Tamn, of counsel and on the brief; Mr. Altschul, on the brief).

Brion D. McGlinn argued the cause for respondent Edward G. Williams, M.D. (Ruprecht Hart Weeks & Ricciardulli, LLP, attorneys; David Parker Weeks, of counsel and on the brief; Mr. McGlinn, on the brief).

Gary L. Riveles argued the cause for respondent Hyeun Park, M.D. (Dughi, Hewit & Domalewski, attorneys; Mr. Riveles, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

In Klier v. Sordoni Skanska Construction Co., 337 N.J. Super. 76 (App. Div. 2001), we held the plaintiffs were denied due process of law when a trial court sua sponte conducted a summary procedure on the day of trial and dismissed their complaint. This medical malpractice case presents an unfortunately more common variation of the scenario in which a litigant's case is dismissed on the day of trial. Although labeled a "motion in limine," the motions filed by defendant Hyeun Park, M.D., on the day before jury selection sought the dismissal of the complaint in its entirety, an admitted violation of the rule governing summary judgment motions. We now hold that the trial court's consideration of these motions

and dismissal of the complaint against Park deprived plaintiffs of their right to due process of law.

## I.

Defendant Park was decedent Seoung Ouk Cho's primary care cardiologist. On April 23, 2009, he examined Cho at NJ Heart and admitted him to Trinitas Regional Medical Center because Cho complained of chest pain and had an abnormal electrocardiogram (EKG). Defendant John H. Shao, M.D., of Garden State Cardiovascular Specialists, performed a heart catheterization and an angioplasty (stent). On June 25, 2009, Shao performed a second stenting procedure at Trinitas. On July 16, 2009, Cho complained to Park that he "was feeling a little bit worse." Park performed an EKG, which was normal, and referred Cho for a thallium stress test at Trinitas.

On July 21, 2009, defendant Edward G. Williams, M.D., administered a stress test to Cho at Trinitas. Williams was not involved in scheduling the test, had never met Cho before and did not have any prior knowledge of Cho's medical history or current condition. Williams terminated the stress test after approximately six minutes, when Cho's EKG changed and he indicated he was experiencing chest pain. Williams immediately administered nitroglycerin spray; Cho's chest pain dissipated.

Williams reached out for Shao. He explained the results of the stress test to a covering physician, who admitted Cho to Trinitas, approximately one hour after Williams terminated the stress test. Williams did not have any further interaction with Cho. On July 23, 2009, while waiting for a scheduled cardiac catheterization, Cho suffered a fatal cardiac arrest.

Plaintiffs are Cho's siblings, Yunjin Jo (Yunjin),[1] individually and in her capacity as administrator of his estate, and Young Ho Jo, and Cho's fiancée, Hannah Cui. Their complaint alleged wrongful death, medical negligence and breach of contract for medical services. As for the injury suffered, plaintiffs alleged they "lost their loved one; have suffered loss of society and consortium; and have lost other rights in relation to plaintiff Cho." Their answers to interrogatories identified plaintiffs' claim for economic damages as follows: "Plaintiff-decedent has lost at least $50,000.00 per year for at least 32 years as plaintiff-decent [sic] would have owned and operated his own business at least until age 70." In her deposition, Yunjin testified she incurred approximately $10,000 in funeral expenses for Cho. No documentation was provided to corroborate this expense or plaintiffs' claims that Cho had his

---

[1] To avoid confusion, we refer to Cho's sister by her first name.

own business, earned any amount of income or provided any financial support to any of the plaintiffs.

Over the course of approximately two years, defendants filed summary judgment motions that resulted in the dismissal of all of plaintiffs' complaint[2] except for the claims against Park.

In November 2011, the claims against Trinitas were dismissed on the ground that plaintiffs failed to comply with the Affidavit of Merit statute, N.J.S.A. 2A:53A-27 to -29.

In March 2012, defendants Park, Garden State and Shao were granted partial summary judgment, dismissing Cui's claims with prejudice on the ground that, as Cho's fiancée she was not entitled to any recovery under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6. The trial court also granted summary judgment to Shao and Garden State based upon plaintiffs' failure to produce an expert report that identified how Shao and Garden State deviated from the accepted standard of care.

---

[2] In Points II, III, IV and V of their appeal, plaintiffs argue that the trial court erred in dismissing the claims against the other defendants, barring Frankenfeld's testimony, dismissing Cui's claims, and further argue that the trial court erred in failing to require defendants to produce records of payments they received from Cho for medical services. After reviewing these arguments in light of the record and applicable legal principles, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In July 2012, the claims against Williams were dismissed on the ground that plaintiffs failed to show his alleged negligence proximately caused Cho's death.

In August 2013, the trial court granted Park's motion to exclude the testimony of plaintiffs' economic expert on the ground that his opinion constituted a net opinion. Plaintiffs filed a motion for leave to appeal this order, which was denied by this court. Thereafter, plaintiffs filed a motion for leave to appeal with the Supreme Court, which denied the motion on December 18, 2013.

In sum, as of August 2013, summary judgment had been granted dismissing the complaint against all defendants other than Park. All claims asserted by Cho's fiancée under the Wrongful Death Act had been dismissed with prejudice. As a result of the order barring Frankenfeld's expert opinion, plaintiffs lacked expert testimony to support their claims that they suffered the loss of economic support from Cho. As of December 18, 2013, no requests for appellate review were pending.

## II.

The matter was listed for trial on Monday, March 31, 2014. This was the second trial date, coming four weeks after the first trial call before the presiding judge. Addressing the

A-5923-13T2

parties, the trial judge noted neither the plaintiffs nor defendant Park wanted to pick a jury that day and stated she understood the parties had "in limine motions" to be heard. She announced a jury would be selected "first thing Wednesday morning," followed by opening statements on Wednesday afternoon. She directed plaintiffs' counsel to bring all exhibits for marking before 9:00 a.m. Park's counsel confirmed he had no issue with any of the exhibits. The court reviewed the order of witnesses and that the defense expert would testify before plaintiffs' expert.

When the trial judge turned to address defendant Park's motions, defense counsel was not prepared to argue any in limine motions. He stated,

> Judge, I, I did point out in chambers that I <u>may</u> have a motion on Wednesday, and that is to dismiss. <u>I'm still mulling it over</u>, because I don't know what damages are left in this case.
>
> As I said, the Complaint does not reference a survival cause of action. [<u>N.J.S.A.</u>] 2A:15-3 is not pled even remotely in the Complaint. And as it relates to income loss, that's gone. So, all that's left is companionship advice and Counsel. And that was not referenced [in] the Answers to Interrogatories. <u>So, I have an Associate working on that for me right now</u>.
>
> [(Emphasis added).]

After further discussion, the trial judge stated she would like to "have some time to reflect on [the motion]" and asked to have the motion filed and served by the following day. Plaintiffs' counsel was not asked for his consent to this procedure and did not pose an objection. The court then proceeded to address plaintiffs' in limine motions.

Park's motion papers were filed on the following day, April 1, 2013. In a sixteen-page brief, Park argued that plaintiffs' wrongful death claim should be dismissed with prejudice because their proofs of economic loss were "too speculative to present to a jury," that the claim for punitive damages should be dismissed with prejudice, and that plaintiffs should be barred from presenting any evidence of pain and suffering by Cho because no survival claim had been pleaded. Finally, Park argued that if the requested relief were granted, no viable claim remained and the complaint should be dismissed in its entirety with prejudice.

With exhibits, Park's submission was 260 pages long. Although there were some citations to the record included in the brief, the moving papers did not include a statement of material facts or otherwise conform to the requirements of Rule 4:46-2(a).

Plaintiffs' five-page opposition was filed and served by email on the same day, within hours of Park's filing. Plaintiffs cited N.J.S.A. 2A:31-5, which authorizes the jury to award

> such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased, to the persons entitled to any intestate personal property of the decedent.
>
> [(Emphasis added).]

Plaintiffs noted that in addition to her contention that she anticipated financial support from Cho, Yunjin testified she paid approximately $10,000 in funeral expenses. They argued further that the complaint could be fairly read to allege a survival action because Cho's sister, brother and fiancée were named as individual parties.

On the following day, the trial judge expressed her reluctance to consider the motion:

> I received an email yesterday; I would say mid to late morning . . . a purported motion in limine seeking to dismiss plaintiff's [sic] claim for punitive damages, wrongful death and preclude any reference to pain and suffering as a survival claim, as they have not been pled.
>
> Now, some Judges, and I've asked them, would not even consider your motion, because it's not a motion in limine. I'm going to give you a chance to explain to me why I

should even consider this, since this is something that could have been made as a motion for summary judgment, as a motion to dismiss, at any time during the — how many years has this case been pending?

After counsel responded that the matter had been pending for three years, the court continued:

Three? Any time during those three years? Why am I getting it; as we have already come to trial, as — you know, if it hadn't been for your . . . engagement yesterday. . . . [w]e would be engaged in trial. I mean [the presiding judge] was less than pleased that I wasn't pulling a jury on Monday. So, why, why should I consider this now? It's not really a motion in limine.

When Park's counsel insisted "it is absolutely a motion in limine," the judge responded, "it's a motion in limine only because you brought it on the eve of trial." The explanation Park's counsel gave for the delay in filing the motion was that there were several appeals to the Appellate Division and the Supreme Court, which deprived the trial court of jurisdiction.[3]

After hearing oral argument, the trial judge issued a decision on the record, granting the motion and dismissing all claims with prejudice. A motion for summary reconsideration was denied and this appeal followed.

---

[3] As we have noted, the Supreme Court denied plaintiffs' motion for leave to appeal from the order barring the testimony of their economic expert in December 2013. No other appellate activity was identified.

In oral argument before this court, Park's counsel presented a different reason for the untimely filing of the motion to dismiss. He stated the motion was filed "at the last minute" because the attorney who had filed Park's earlier motion to bar the testimony of the economic expert had left the law firm and trial counsel received the file to prepare for trial just prior to the weekend before trial. Although he admitted that the filing of the motions violated the Rules of Court, counsel maintained he was entitled to file a motion to dismiss the complaint at any time, even at trial. Counsel argued further that the order dismissing the complaint against Park should be affirmed because the complaint lacked merit.

## III.

Our Rules of Court provide explicit requirements for the timing of summary judgment motions, what must be presented in support of and in opposition to such motions, and the standard for deciding them. R. 4:46-1, -2. There are, however, no rules that explicitly address motions in limine.

The term "in limine" is taken from the Latin phrase, "at the outset." Black's Law Dictionary 791 (9th ed. 2009). The absence of any rule addressing what may properly be considered as a preliminary matter before trial commences has permitted the timing of the motion, rather than its subject matter, to pass

for a definition. However, whether a motion is correctly termed a motion in limine is not dictated by the fact it is brought literally on the threshold of trial. Black's defines a motion in limine as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." Id. at 1109.[4] Thus, it is anticipated that, as a general rule, a motion in limine will not have a dispositive impact on a litigant's entire case.

Even when a limited issue is presented, "[o]ur courts generally disfavor in limine rulings on evidence questions," because the trial provides a superior context for the consideration of such issues. State v. Cordero, 438 N.J. Super. 472, 484-85 (App. Div. 2014), certif. denied, 221 N.J. 287 (2015). Although a trial judge "retains the discretion, in appropriate cases, to rule on the admissibility of evidence pre-trial," id. at 484, we have cautioned that "[r]equests for such rulings should be granted only sparingly." Ibid. (quoting Bellardini v. Krikorian, 222 N.J. Super. 457, 464 (App. Div. 1988); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 105 (2015). This is particularly true when the "motion in limine" seeks the

---

[4] Arguably, defendant's motion to exclude evidence of Cho's pain and suffering because no survival claim had been pleaded, would fall within this description.

exclusion of an expert's testimony, an objective that has the concomitant effect of rendering a plaintiff's claim futile. See Bellardini, supra, 222 N.J. Super. at 463-64.

The fact that this misuse of the motion in limine occurs sufficiently often to win our notice, despite our repeated cautions against such practice, leads us to conclude it necessary to state clearly what a motion in limine is not. It is not a summary judgment motion that happens to be filed on the eve of trial. When granting a motion will result in the dismissal of a plaintiff's case or the suppression of a defendant's defenses, the motion is subject to Rule 4:46, the rule that governs summary judgment motions.

Rule 4:46-1 states, "[a]ll motions for summary judgment shall be returnable no later than 30 days before the scheduled trial date, unless the court otherwise orders for good cause shown." In our view, the "unless otherwise ordered" language contemplates scheduling by the court, prior to trial, either sua sponte or upon a showing of good cause by the movant. However, even if the good-cause standard applies here,[5] defendant failed

_____

[5] Although we need not reach this issue on the facts before us, it would not be unreasonable to infer that defendant's request to have his untimely motion entertained at trial should be subject to an "extraordinary circumstances" standard. See Klier, supra, 337 N.J. Super. at 85 (suggesting a summary

(continued)

A-5923-13T2

to make a sufficient showing to justify consideration of his untimely motion.

Using language similar to Rule 4:46-1, Rule 4:24-2 identifies motions that must be made returnable before the expiration of the discovery period "unless on notice and motion, for good cause shown, the court otherwise permits." In Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 80-82 (App. Div. 2007) (emphasis added), we found the trial court did not abuse its discretion in denying a motion made at trial, and "grossly out of time," to compel discovery of a document where the moving party had knowledge of the document, failed to file a timely motion and offered no explanation for such failure.

Here, too, the documents relied upon by Park to support his motions were available for review long before the time in which to file a summary judgment motion expired. Defendant's stated reason that the court had lacked jurisdiction to entertain the motion fails to establish good cause in light of the fact that appellate proceedings concluded more than three months before the trial date and did not preclude the filing of a timely motion. Similarly, the unexceptional departure of an associate falls short of establishing good cause.

---

(continued)
dismissal at trial may be an appropriate exercise of discretion when the situation is "truly emergent" or "extraordinary").

We also find no basis for the application of Rule 1:1-2, which generally permits the relaxation of a rule "if adherence to it would result in an injustice." "Rule 1:1-2 is the exception, rather than the norm," Romagnola v. Gillespie, Inc., 194 N.J. 596, 604 (2008) (quoting State v. Williams, 184 N.J. 432, 442 (2005)), and "should be sparingly resorted to, particularly when a reasonable interpretation of the complex of directly applicable rules meets the problem at hand." Pressler and Verniero, Current N.J. Court Rules, comment 2 on R. 1:1-2 (2016); Romagnola, supra, 194 N.J. at 604; Bender v. Adelson, 187 N.J. 411, 431 (2006). The "problem at hand" is the appropriate timing of dispositive motions. Rule 4:46 meets that problem, recognizing the "obvious" desirability of deciding such motions prior to trial and establishing requirements to accomplish that goal. Pressler & Verniero, supra, comment on R. 4:46-1.

It is, therefore, clear that the Rules of Court offer no legitimate path for the consideration of defendant's motions on the day before jury selection. We therefore turn to the question whether the dismissal of the complaint based upon these motions deprived plaintiffs of due process of law.

A-5923-13T2

IV.

"Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995); see Pelullo v. State, Comm'n of Investigation, 294 N.J. Super. 336, 345 (App. Div. 1996), certif. denied, 149 N.J. 35 (1997). "[W]hile the concepts of 'judicial administration' and fairness are not necessarily incompatible, the desire to facilitate judicial administration must take a back seat to our primary goal which is to adjudicate cases fairly and impartially." Klier, supra, 337 N.J. Super. at 83. "Our rules of court must be 'construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.'" Ibid. (quoting R. 1:1-2).

The summary judgment rules have been amended over the years to ensure those goals are realized. Prior to the amendment that became effective January 1986, the timing of summary judgment motions was subject to Rule 1:6-3. Pressler & Verniero, supra, History and Analysis of Rule Amendments to R. 4:46-1 (Gann Online Edition). The impetus for the amendment was the recognition it was "patently unfair to apply the time frames of R. 1:6-3(a), which give the respondent only 8 days in which to file and serve the response" when the movant was free from any

time constraints. Pressler & Verniero, supra, comment on R. 4:46-1 (emphasis added). To remedy this, the amendment afforded the respondent "approximately three weeks for response." Ibid. The amendment also required summary judgment motions be "returnable no later than 30 days before trial" to implement the goal of resolving dispositive motions prior to trial. Ibid. Trial judges were encouraged to decide summary judgment motions on a more timely basis by providing that adjournment requests be "liberally granted" if the "disposition is not [communicated] at least 10 days prior to the scheduled trial date." Ibid. This change was made "[i]n recognition of counsel's need to know the disposition of the summary judgment motion in sufficient time to prepare for trial if the motion is denied or only partially granted." Ibid.

"Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances." Doe, supra, 142 N.J. at 106. Therefore, we do not hold that the summary judgment rules establish rigid requirements that must be met in every case for due process demands to be satisfied. Still, the time requirements for the filing and decision of summary judgment motions provide a useful background for assessing whether plaintiffs had an opportunity to be heard at a meaningful time and in a meaningful manner.

A-5923-13T2

In this case, the timing requirements of Rule 4:46-1 were violated in every respect. Notice of the motion came not thirty days before the trial date, but after the second trial date. Plaintiffs had less than one day to file their response. This was not only substantially less than the three weeks afforded them by Rule 4:46-1; it was even less than the "patently unfair" eight-day period in effect prior to the rule's amendment. Finally, the decision here was rendered the day before jury selection, presumably after plaintiffs had expended some effort and expense to prepare for trial, rather than the ten days before trial anticipated by the rule.[6]

In Klier, the trial court afforded plaintiffs' attorney two days to produce his expert's report and argue against a motion for dismissal. 337 N.J. Super. at 84. Observing the "obvious" purpose of the summary judgment rules was "to afford the party against whom relief is sought notice of the application, together with a meaningful opportunity to respond," we concluded that two days was insufficient to cure the deficiencies in the

---

[6] The movant also failed to comply with the requirements of Rule 4:46-2(a), which are intended "to focus the parties' attention on the areas of actual dispute" and "significantly facilitate the court's review." Pressler and Verniero, supra, comment 1 on R. 4:46-2. This failure put both the trial judge and plaintiffs at an unnecessary disadvantage.

plaintiffs' opportunity to respond.  Id. at 84-85.  Accordingly, we held the plaintiffs had been deprived due process of law.

We reach the same conclusion here.  Further, we utterly reject the argument that the dismissal should be affirmed, despite the violation of summary judgment rules, because plaintiffs suffered no prejudice in the dismissal of claims that lacked merit.  The right to due process of law is not limited to worthy causes.  However, we note that, because we conclude that these motions should not have been considered by the court, we express no opinion as to the merits of the motions.

We are not insensitive to the pressures upon the court and litigants that may make it appear reasonable to disregard the requirements of the rules and sound the death knell to a litigant's case on the day of trial.  Lawyers burdened with heavy caseloads may lack the heightened focus to identify dispositive issues earlier.  A litigant may be unable or unwilling to acknowledge weaknesses in his or her case.  Trial judges may be sorely tempted to spare jurors the task of hearing a cause that appears to lack merit and turn to the demands of an unyielding calendar.  Still, our commitment to the fair administration of justice demands that we protect a litigant's right to proceed to trial when he or she has not been afforded the opportunity to respond to dispositive motions at a

A-5923-13T2

meaningful time and in a meaningful manner. We therefore hold that, absent extraordinary circumstances or the opposing party's consent, the consideration of an untimely summary judgment motion at trial and resulting dismissal of a complaint deprives a plaintiff of due process of law.

The order dismissing plaintiffs' complaint against defendant Park is reversed. We remand the matter for restoration to the trial calendar and leave further management of the case to the discretion of the trial court.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION