**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1680-23

VICTORIA PENNETTI,

     Plaintiff-Appellant,

v.

SONYA K. ZEIGLER, ESQUIRE
and STOLFE ZEIGLER FAMILY
LAW GROUP,

     Defendants-Respondents.

_____

Argued February 12, 2025 – Decided May 15, 2025

Before Judges Marczyk, Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1189-21.

David A. Berlin argued the cause for appellant (Weisberg Law, attorneys; Matthew B. Weisberg, on the briefs).

John L. Slimm argued the cause for respondents (Marshall Dennehey, PC, attorneys; John L. Slimm and Jeremy J. Zacharias, of counsel and on the brief).

PER CURIAM

In this legal malpractice matter, plaintiff Victoria Pennetti appeals following the grant of a motion for involuntary dismissal, under Rule 4:37-2(b),[1] to defendants Sonya K. Zeigler, Esq. (Zeigler) and Stolfe Zeigler Family Law Group.

Pennetti appeals from two trial court orders.[2] The first order, September 29, 2023, granted partial summary judgment and barred Pennetti's expert's, Cary

---

[1] Rule 4:37-2(b) provides:

> After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

[2] In Pennetti's Case Information Statement, she lists orders of: May 24, 2023, August 25, 2023, November 27, 2023, and January 12, 2024. However, she has not briefed the issues directly related to these orders. "An issue that is not briefed is deemed waived upon appeal." N.J. Dept. of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015). Therefore, we do not consider those orders here. We recognize the January 12, 2024 order is impacted by our opinion regarding the orders briefed.

A-1680-23

Cheifetz's, opinion regarding the deviation from the standard of care and damages relating to Pennetti's claim of negligence in connection with the filing of a post-judgment modification motion. Because we conclude the trial court properly applied collateral estoppel and the summary judgment standard, we affirm this order.

The second order, January 10, 2024, was issued following a N.J.R.E. 104[3] hearing, and the trial court's determination that Cheifetz was barred "from testifying on proximate causation and the quantum of alleged damages." Because we are satisfied the trial court did not misuse its discretion, we affirm this order.

---

[3] Rule 104(a) provides:

> (1) The court shall decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege and Rule 403.
>
> (2) The court may hear and determine such matters out of the presence or hearing of the jury.

We are familiar with the underlying matrimonial matter[4] that gave rise to the alleged legal malpractice claims against defendants. The complaint for divorce was filed in September 2013.[5] Zeigler assumed Pennetti's representation in July 2015. Pennetti and her ex-husband "divorced by way of a June 8, 2017 final judgment, which incorporated three consent orders." W.S.H. v. V.L.P., No. A-0644-19 (App. Div. Jan. 22, 2021) (slip op. at 2).

> The first consent order [dated June 1, 2016] obligated [Pennetti] to pay [her ex-husband] alimony for five years at a monthly rate of $5[,]000. The second [consent order dated August 3, 2016] permitted [Pennetti] to retain all the parties' real estate as well as complete ownership of her business in exchange for her agreement to pay $400,000 to [her ex-husband] over a considerable period of time. The third consent order [dated April 26, 2017] addressed custody and parenting time issues . . . .
>
> [Id. at 1-2.]

---

[4] See W.S.H. v. V.L.P., No. A-0644-19 (App. Div. Jan. 22, 2021) and W.S.H. v. V.L.P., No. A-4297-19 (App. Div. Feb. 16, 2022).

[5] Pennetti was initially represented by Gary B. Sacharow, Esq.

A-1680-23

The June consent order modified the parties May 4, 2016 Memorandum of Understanding, that provided the alimony "sum [wa]s non-modifiable as to term and amount."[6]

The August consent order incorporated the parties' July 28, 2016 Second Memorandum of Understanding. The second memorandum, in part, provided:

> 2. The parties agree [Pennetti] will retain 100% ownership in the business know[n] as Ultrasound Solutions, LLC, free and clear of any claims, equitable or legal, by [h]usband.
>
> 3. Husband will retain all jewelry and other personal property in his possession. [Pennetti] will transfer title or prepare a [b]ill of [s]ale (for $1[]) for the [u]tility [t]railer to [h]usband . . . .
>
> 4. [Pennetti] will retain all jewelry, furs, artwork, and collectibles and other personal property in her possession and located at the former marital home . . . .
>
> 5. Each party will retain all vehicles in their possession free and clear of any claim, equitable or legal, by the other.

---

[6] This clause is referred to as an anti-<u>Lepis</u> clause. <u>See</u> <u>Lepis v. Lepis</u>, 83 N.J. 139, 146 (1980); <u>see also</u> <u>Morris v. Morris</u>, 263 N.J. Super. 237 (App. Div. 1993).

"By the time the judgment was entered, [Pennetti] was already in arrears." Id. at 2. In an October 2017 order, the Family Part granted the ex-husband's motion to enforce the judgment. See ibid.

In July 2019, the ex-husband filed another motion for enforcement. Pennetti, through the Whitman law firm—Zeigler's representation of Pennetti ended on December 14, 2018—"cross-moved, seeking, among other things: a '[r]estructuring' of the monthly equitable distribution payments 'due to a substantial change in circumstances'; . . . [and] a declaratory judgment that would relieve her of the 'anti-Lepis' clause contained in the judgment of divorce." Id. at 2-3 (first alteration in original). The Family Part, in a September 2019 order, required Pennetti to make payments and denied her cross-motion.

We affirmed the September 2019 order.[7] We noted Pennetti's appeal lacked sufficient "merit . . . to warrant . . . discussion in a written opinion." We added that "[h]er arguments . . . reveal[ed] only her remorse with the various agreements embodied in the judgment" of divorce. Id. at 5.

In addition, we explained Pennetti's arguments fell "far short of suggesting a ground for avoiding the anti-Lepis provision." Id. at 4-5. We stated that "in

---

[7] In her appeals, Pennetti was represented by Hegge & Confusione, LLC.

A-1680-23

Lepis . . ., the [New Jersey Supreme] Court recognized the power to modify court ordered alimony or child support upon a showing of changed circumstances."  Id. at 3 n.3.  However, we noted Pennetti's "financial circumstances had not undergone a sufficient change to warrant a modification or even an evidentiary hearing."  Id. at 5 n.4.

Further, we noted that "[a]n anti-Lepis clause purports to prohibit the obligor from filing a motion for that relief; [but] whether such clause will be enforced depend[ed] on several factors."  Id. at 3 n.3 (citing Morris, 263 N.J. Super. at 240-41;[8] Smith v. Smith, 261 N.J. Super. 198, 199 (Ch. Div. 1992); Finckin v. Finckin, 240 N.J. Super. 204, 205 (Ch. Div. 1990)).  Nonetheless, "even assuming that provision's absence, [Pennetti]'s submissions to the motion judge failed to suggest sufficiently changed circumstances so as to allow a modification of the alimony obligation or the equitable distribution schedule."  Id. at 5.

In June 2021, Pennetti filed a legal malpractice complaint against defendants.  Pennetti stated she had retained Zeigler to represent her in the

---

[8] In Morris, we held "parties can establish their own standards, and . . . where not unwarranted under the circumstances, will be enforced by the court irrespective of the . . . guidelines of Lepis, which are applied when there are no such standards.  If circumstances have made the parties' standards unreasonable, they can in extreme cases be modified."  263 N.J. Super. at 245-46.

divorce proceeding. Pennetti contended: (1) Zeigler "failed to properly value [her] business," Ultrasound Solutions, LLC, during the "divorce proceeding and settlement negotiations"; (2) Zeigler failed "to advise [her] on the advantages and disadvantages of . . . including [an] anti-Lep[i]s clause in her divorce decree"; and (3) she "fell behind in her payments to [her ex-husband]. Due to the anti-Lep[i]s clause, [she] was unable to modify her settlement agreement and payments to [her ex-husband]. Had [she] been properly versed in the consequences of including an anti-Lep[i]s clause . . ., she would have never agreed to it."

On September 29, 2023, the court granted, in part, Zeigler's motion for partial summary judgment. Zeigler argued the Family Part's September 2019 denial of Pennetti's motion for modification could not form the basis of a legal malpractice claim against Zeigler as opined by Cheifetz.

First, Zeigler contended the motion was filed by the Whitman firm, so any alleged malpractice in the filing of the motion could not be attributed to her. Second, Zeigler relied on our opinion, W.S.H. v. V.L.P., No. A-0644-19, and asserted that Pennetti was collaterally estopped from re-litigating the anti-Lepis clause or that she was damaged by the denial of the motion for modification.

In an oral opinion, the civil court recited extensively from our opinion. The court concluded collateral estoppel applied to Pennetti's modification claim because we had determined her "arguments fell short of suggesting a ground for avoiding the . . . anti-Lepis provision and even assuming the provision's absence, there would be no basis to modify on a change of circumstances."

The court stated:

> Collateral estoppel . . . relates to issue preclusion and at the heart of this case, as well as the [modification] motion that was before [the Family Part] and then the appeal that was before the Appellate Division, really related to the anti-Lepis clause and modification based on the change of circumstance, which is exactly what the plaintiff's experts here argue [wa]s . . . a deviation by . . . including the anti-Lepis provision or [not having] counseled . . . plaintiff in that regard. But . . . the Appellate Division, notes that even so, . . . it's of no moment because there's no ground for avoiding the anti-Lepis provision and there's no basis for modification based on a change of circumstance.
>
> In order for collateral estoppel to preclude re-litigation of an issue, the issue to be precluded must be identical to the issue decided in the prior proceeding. It's the same issue, this anti-Lepis clause and . . . modification based on a change of circumstance. The issue must have actually been litigated in a prior proceeding . . . no question that it was, before [the Family Part] and then before the Appellate Division; the [Family Part] in the prior proceeding issued a final judgment on the merits . . . no question that that occurred; the determination the issue was essential to the prior judgment . . .; and the party against whom the

A-1680-23

doctrine is asserted was a party or in privity with a party to the earlier proceeding. So, [Zeigler] . . . need not be a party. It's the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding. The doctrine is being asserted against . . . [Pennetti] here. She was a party to the earlier proceeding.

And so, given that, [this c]ourt finds that because th[e] issue of the anti-Lepis clause modification and change in circumstance was already litigated by . . . [Pennetti] before [the Family Part], who made a final determination on it, and then affirmed by the Appellate Division, th[is c]ourt cannot now allow this to go to a jury and have the jury find something different than the . . . [Family Part] and the Appellate Division have already found. . . . That's . . . why collateral estoppel exists, . . ., because we can't have two juxtaposed rulings on the exact same issue.

Pennetti filed a motion to reconsider the September 29, 2023 order. The court heard the parties' oral arguments on November 27, 2023. Pennetti argued the court should consider a motion filed by Zeigler in September 2018, rather than the later motion filed by Whitman. Pennetti argued that Cheifetz opined Zeigler deviated from the standard of care by filing "a substantive motion for modification" that lacked available evidence.

The court found the September 2018 motion sought to modify "timing relating to payment and was not a [motion to] modif[y] for a change in circumstance." The court noted Cheifetz's opinion that the motion should have

10

sought a change-in-circumstance modification. However, the court also noted Whitman filed the modification motion which was denied by the Family Part and affirmed by the Appellate Division. Again, the court relied on our affirmance, applied collateral estoppel, and denied reconsideration.

In addition, although noting it was "not the basis for [its] decision," the court stated "there [we]re issues with . . . Cheifetz's report." The court stated that Cheifetz opined that Zeigler "should have known . . . to make th[e] argument for a change in circumstance . . . based on tax information that . . . Cheifetz obtained from the 2018, 2019, and . . . 2020 tax returns." However, "the motion was filed in September of 2018 before those tax returns could even be filed." Further, the court noted Cheifetz did "not set forth any other facts other than relying on those tax returns, . . . for the basis of his opinion." Therefore, "[w]hile it [wa]s not before the [c]ourt right now, it would appear that . . . is a net opinion given that . . . his report can only be [as] good . . . as the facts relied upon."

On January 4, 2024, the trial court heard the parties' oral arguments on their motions in limine. As relevant here, Zeigler's moved to strike Cheifetz's opinion as an inadmissible "net opinion." The court and the parties acknowledged that Cheifetz could not offer:

> [A]ny opinion relating to the standard of care concerning . . . post[-divorce]-judgment issues, . . . that

would include . . . modification, equitable distribution, all the things that [the Family Part] ruled on and went . . . to the Appellate Division, . . . those are not in the case, so what you[ are] dealing with is alleged negligence that occurred leading up the entry of the divorce judgment.

However, as to the motion, the trial court stated "an in limine motion is limited to a pretrial request that certain admissible evidence not be referenced to or offered at trial, and as a general rule would not have a dispositive impact on the litigant's entire case," quoting Seung Ouk Cho v. Trinitas Regional Medical Center, 443 N.J. Super. 461 (App. Div. 2015). Further, "[a]n in limine motion, which is essentially a summary judgment motion filed on the eve of trial must comply with the procedural requirements [for a summary judgment motion] under Rule 4:46 and that the failure to do so violates [a party]'s right to due process of law," again citing Cho, id. at 474-75. Therefore, the court stated, if it granted Zeigler's motion it "would run afoul of Cho."

Nevertheless, the trial court noted:

The Cho ruling does not mean that a defendant cannot challenge the admissibility of these expert opinions. The defendant retains the right to voir dire expert witnesses outside of the presence of the jury, for [the court] to have a [Rule] 104 hearing, and to have the [c]ourt rule on the admissibility of expert testimony, and it does[ no]t mean if the party fails to challenge admissibility of expert testimony prior to trial, there[ i]s a waiver of the right to object to the expert testimony

12

at trial, so the expert testimony must still be admissible, . . . can[ no]t be net opinion, and it[ is] the burden and the proponent of the expert witness to demonstrate to the [c]ourt that the expert testimony is admissible in accordance with the [Rules of Evidence] and our case law.

Therefore, noting its review of the reports, and the comments made about the reports during the motion for reconsideration, the trial court determined it would hold a Rule 104 hearing to determine the admissibility of Cheifetz's opinion.

The trial began on January 8, 2023. After the jury was selected, but outside the jury's presence, the trial court conducted the Rule 104 hearing. At the outset of the hearing, Pennetti's counsel stated it was "narrowing the scope of [the] case and also . . . Cheifetz's testimony." The damages portion of the case would be limited to the overvaluation of the business. Pennetti contended the business was overvalued by $161,000 and Cheifetz would testify that "customarily, in a divorce matter you would divide that by two. So, the damage to . . . Pennetti would have been $80,500."

Cheifetz testified during the hearing and was subject to cross-examination. He stated that he "reviewed correspondence, . . . the pleadings in the underlying [matrimonial] action, . . . the pleadings in this action, . . . some

13

tax returns, . . . some expert reports that were disseminated in connection with the underlying [matrimonial] case, as well as [in] this case."

Cheifetz testified as to his opinion regarding the standard of care and how Zeigler's representation breached that standard. Further, he testified regarding his opinion of Pennetti's damages, caused by Zeigler's breach.

Cheifetz accepted the overvaluation amount of $161,000. He testified Pennetti "would have suffered damages in the amount of" $80,500, because he thought the settlement agreement "was premised on [a] 50/50" split. He acknowledged that he "assum[ed]" there was "a 50/50 split in connection with the business." He testified "it seemed to [him] anyway, that the parties, when they entered into their agreement, were trying to accomplish a 50/50 split of the assets." He thought "that was the goal."

However, he also testified that there was "[n]o question" "this [wa]s the kind of settlement that was an amalgam of various factors and assets going together so you could do it global[ly]." Further, he stated he "could [not] rationalize how they" reached the settlement because "there[ wa]s nothing in the agreement or [he] could[ no]t find anything that would indicate how they really got to any of those numbers."

He acknowledged he did not "refer to other matrimonial settlement agreements from Burlington County or any related county or any [settlement agreements] that [he] actually did under like circumstances." Further, he did not consider whether the ex-husband or the ex-husband's attorney "would have taken a lesser" settlement amount. Instead, his opinion was based on his "experience as a matrimonial lawyer."

In an oral opinion, the trial court stated there was "sufficient basis in the record and . . . Cheifetz's opinion and his testimony that he . . . [wa]s permitted to give . . . an expert opinion with regard to the issue of negligence and the issue of deviation from [the] standard of care."

However, the trial court found Cheifetz's opinion about proximate cause did not "have a sufficient factual basis." The court also determined that Cheifetz could not offer an "expert opinion as to the . . . quantum of damages." The court stated that case law stood "for the proposition that . . . expert testimony as to proximate cause in . . . an attorney malpractice case, is required and . . . the expert has to have . . . a basis . . . in the facts and has to explain the . . . why and wherefore." The court found Cheifetz's testimony failed to "sufficiently point[] to facts in the record that allow[ed] him to draw a conclusion . . . that [Pennetti] sustained damages in the amount of $80,500."

15

Instead, the trial court stated the parties engaged in "a complex negotiation involving a variety of issues relating to the resolution of the . . . divorce." The court noted the "issues included equitable distribution, not only of the value of [Pennetti]'s company, but many other assets including retirement funds and . . . other assets, vehicles . . . child support . . . and . . . alimony."

The court stated that Cheifetz failed to provide a "connection" to the asserted damage. Instead, the court found that Cheifetz made a "jump," without "showing . . . in his work . . . the why and wherefore" and found the damages "just because . . . h[e] sa[id] so." In the absence of "some explanation . . . taking into account all the other various aspects . . . of the settlement[,] . . . [the court was left with] . . . speculation," citing Townsend v. Pierre, 221 N.J. 36 (2015). Further, the trial court stated "a standard which is personal to the expert is equivalent to a net opinion," citing Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999).

In addition, the trial court found Cheifetz did "not have any opinion [or] demonstrat[e] in any way that the . . . ex-husband would have accepted a different settlement that included the calculation of damages . . . that [Pennetti was] advancing, in other words, a settlement that would have reduced his equitable distribution share by $80,500."

Therefore, the court concluded Cheifetz offered a net opinion as to proximate cause and the amount of damages and barred his testimony on those issues.

At the conclusion of Pennetti's case in chief, Zeigler moved for an involuntary dismissal under Rule 4:37-2(b). In an oral opinion, the trial court granted the motion stating, "the exclusion of the testimony of . . . Cheifetz on the issue of proximate cause and the quantum of damages [wa]s fatal to [Pennetti]'s case."

Further, the court stated Pennetti's claim "essentially [wa]s based on an insufficient settlement theory," citing Morris Properties, Inc. v. Wheeler, 476 N.J. Super. 448 (App. Div. 2023); Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97 (App. Div. 2001); and Kelly v. Berlin, 300 N.J. Super. 256 (App. Div. 1997). Therefore, it was "plaintiff's burden . . . to present expert testimony to enable the jury to determine whether the alleged malpractice caused the plaintiff to have to settle for a . . . lower amount than she otherwise would have; and if so, the amount of the damages sustained as a result." However, "the damages figure that [Cheifetz] proposed [wa]s not a damages figure . . . showing [a] . . . lower amount that [Pennetti] received in the settlement as compared to the

17

amount of . . . settlement that [Pennetti] would have gotten but for the malpractice."

The trial court acknowledged that there was not an absolute bar to Pennetti's malpractice cause of action against Zeigler, merely because she settled the underlying matrimonial matter, citing Gere v. Louis, 209 N.J. 486 (2012); Guido v. Duane Morris, LLP, 202 N.J. 79 (2010); and Puder v. Buechel, 183 N.J. 428 (2005). The court concluded its "ruling on the expert testimony was not based . . . at all, on" there being an absolute bar.

On appeal, Pennetti argues the trial court erred by: (1) "sua sponte ordering a Rule 104 hearing in response to Zeigler's [m]otion in [l]imine to preclude Cheifetz's testimony as to proximate cause and damages instead of denying the motion as untimely in accordance with due process of law," citing Cho; (2) barring Cheifetz from testifying "regarding the measure of damages that were proximately caused by the breach based on his personal experience as a matrimonial attorney, his reliance on Pennetti's [valuation] expert, and his review of the facts of the underlying divorce case"; (3) "mischaracterizing the alleged malpractice at issue, turning an ordinary proximate cause analysis into an impossibly speculative inquiry, based on a misplaced reliance on [our] analysis in Morris Properties"; and (4) "granting partial summary judgment

dismissing Pennetti's challenge to the anti-Lepis clause in the modification motion when genuine issues of material fact demonstrated that Pennetti would not have entered into a settlement agreement but for Zeigler's negligence."

1.

Pennetti contends the trial court erred by sua sponte ordering the Rule 104 hearing, rather than denying consideration of Cheifetz's testimony as to proximate cause and damages under Cho.

In Cho, we stated "a motion in limine [i]s '[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial.'" Cho, 443 N.J. Super. at 470 (second alteration in original) (quoting Black's Law Dictionary 791 (9th ed. 2009)). Therefore, "it is anticipated that, as a general rule, a motion in limine will not have a dispositive impact on a litigant's entire case." Ibid. Further, "[e]ven when a limited issue is presented, '[o]ur courts generally disfavor in limine rulings on evidence questions,' because the trial provides a superior context for the consideration of such issues." Ibid. (second alteration in original) (quoting State v. Cordero, 438 N.J. Super. 472, 484-85 (App. Div. 2014)).

Moreover, "we have cautioned that '[r]equests for such rulings should be granted only sparingly.'" Ibid. (alteration in original) (quoting Cordero, 438

N.J. Super. at 484).  Especially "when the 'motion in limine' seeks the exclusion of an expert's testimony, an objective that has the concomitant effect of rendering a plaintiff's claim futile."  Id. at 470-71.

Here, the trial court complied with Cho, and denied the in limine motion. Nevertheless, having complied with Cho, the court was not stripped of its discretion to hold a Rule 104 hearing; see Kemp v. State, 174 N.J. 412, 432 (2002) ("the need for a hearing is remitted to the trial court's discretion"); In re Accutane Lit., 234 N.J. 340, 348-49 (2018) (nor was the court stripped of its "role as gatekeeper of . . . expert testimony in civil cases").

Therefore, we conclude the trial court correctly denied the in limine motion, pursuant to Cho.  Further, having determined the trial court maintained its Rule 104 discretion and its gatekeeping role, we conclude there was no misuse of discretion in the trial court's decision to hold the Rule 104 hearing.

2.

Pennetti contends the trial court erred by barring Cheifetz from testifying "regarding the measure of damages that were proximately caused by the breach."

"Our review of the trial court's evidential rulings 'is limited to examining the decision for abuse of discretion.'" Primmer v. Harrison, 472 N.J. Super. 173, 187 (App. Div. 2022) (quoting Ehrlich v. Sorokin, 451 N.J. Super. 119, 128

(App. Div. 2017)) An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"A legal malpractice claim is 'grounded in the tort of negligence.'" Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (quoting Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020)) (internal quotation marks omitted). Therefore, "the elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Ibid. (quoting Nieves, 241 N.J. at 582) (internal quotation marks omitted). Here, the trial court determined Cheifetz could offer his expert opinion only as to the first two elements.

As to the third element, Pennetti was required to present expert testimony to prove "proximate causation and damages." Morris Props., 476 N.J. Super. at 461. In other words, through Cheifetz's expert testimony, Pennetti was required to establish she would have paid her ex-husband less than she agreed to, had Zeigler obtained a lower valuation of the business. See Kaplan, 339 N.J. Super.

at 103 ("This court has previously required expert testimony to determine . . . fair settlement value . . . .").

"It is fundamental that a plaintiff must 'prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate.'" Kelly, 300 N.J. Super. at 268 (quoting Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)). "Damage awards may not be based on mere speculation." Ibid.

Further, "[a]n opinion lacking in foundation is worthless." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). Therefore, "[w]hen an expert's opinion is merely a bare conclusion . . ., i.e., a 'net opinion,' it is inadmissible." Ibid. "In essence, the net opinion rule requires the expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion." Ibid. "Where, . . ., an expert offers an opinion without providing specific underlying reasons . . ., he [or she] ceases to be an aid to the trier of fact and becomes nothing more than an additional juror." Ibid.

In Kaplan, we noted, an expert could "render a comparison of similar property settlement agreements." 339 N.J. Super. at 104. However, offering "one an[ec]dotal reference to a . . . recently handled" case was insufficient. Ibid.

22

Considering this well-established law, we conclude the trial court did not misuse its discretion in barring Cheifetz's testimony regarding causation and damages. We start with the recognition that the trial court applied the correct law. Therefore, the court's analysis was not founded on an impermissible basis. See Flagg, 171 N.J. at 571.

Pennetti contends:

> Cheifetz was prepared to testify that his measure of damages was based on his personal observations in his forty-plus years of experience as a matrimonial lawyer, his reliance on Pennetti's economic expert, and his review of the facts of the underlying divorce case in which he opined that the parties were attempting a 50/50 split of assets.

However, her contention is undermined by a careful review of Cheifetz's testimony. Absent from Cheifetz's testimony was an analysis of how a correct valuation would have actually affected the parties' settlement. Indeed, Cheifetz could not "rationalize" how the parties had reached their settlement figures in the first place, and his testimony failed to address how the correct valuation would have affected the settlement or Pennetti's payment obligations.

Further, Cheifetz acknowledged the settlement was an "amalgam of various factors and assets" and the parties sought a global settlement. However, he failed to explain how those factors and assets would have been impacted by

23

a correct valuation or how the correct valuation would have affected the global settlement.

In addition, Cheifetz testified he "assum[ed]"; "it seemed to" him; and he thought "the goal" was for the parties to split the assets 50/50. However, he also acknowledged the settlement agreement itself lacked any indication as to how the parties arrived at the settlement numbers.

Moreover, while Cheifetz's expert qualifications were not in doubt, he failed to testify about his actual experience, or a professional standard, in settling similar matters. He acknowledged he did not perform a countywide analysis of similar settlement agreements. See Kelly, 300 N.J. Super. at 269; Kaplan, 339 N.J. Super. at 104.

In the absence of the "why and wherefore," Cheifetz's opinion that Pennetti's payment obligation under the settlement agreement was overstated because Zeigler did not obtain a correct business valuation is a "net opinion," a "mere conclusion." See Jimenez, 286 N.J. Super. at 540. Therefore, the trial court did not misapply its discretion in barring Cheifetz's opinion.

### 3.

Pennetti argues the trial court erred by "mischaracterizing the alleged malpractice at issue, turning an ordinary proximate cause analysis into an

impossibly speculative inquiry, based on a misplaced reliance on [our] analysis in Morris Properties."

In this respect, Pennetti takes contradictory positions. On one hand, Pennetti states "[s]he is not claiming that the settlement . . . dollar amount was insufficient, but rather the recognized cause of action that Zeigler's failure to provide proper legal advice led [her] to enter into a settlement with tangible resulting damages caused by the deviation from the standard of care." Therefore, she contends, "how much the divorce case settled for . . . [wa]s not at issue here."

On the other hand, she states "her attorney breached the standard of care to value her business properly, and . . . because of that breach, she entered into settlement with an outdated valuation of Ultrasound Solutions, which caused her to suffer damages calculated by . . . [Cheifetz]'s opinion."

We conclude the amount for which the divorce case settled was at issue because Pennetti alleges the purportedly heightened valuation led to a settlement that required her to pay more than she would, or should have, but for Zeigler's negligence. Therefore, we conclude the trial court correctly applied the framework for expert opinions established in Morris Properties, Kaplan, and Kelly.

4.

Pennetti argues the trial court erred in "granting partial summary judgment dismissing [her] challenge to the anti-Lepis clause in the . . . modification motion when genuine issues of material fact demonstrated that Pennetti would not have entered into a settlement agreement but for Zeigler's negligence."

Pennetti contends:

> Whether Zeigler's 2018 modification motion was decided on the merits by the Appellate Division does not collaterally estop [her] malpractice claim when genuine issues of material fact demonstrate that she would not have entered into the settlement agreement in the first place but for Zeigler's negligence in failing to have an updated valuation of her economic position.[9]

> If there [wa]s a genuine issue of fact that Pennetti would not have entered into the settlement agreement, that opens the door to all of Pennetti's damages that flowed from enforcement of the settlement agreement, including . . . the inclusion of the anti-Lepis clause.

We review the grant of summary judgment, see Gilbert v. Stewart, 247 N.J. 421, 442 (2021), and the application of collateral estoppel de novo. See Gannon v. Am. Home Prods., Inc., 414 N.J. Super. 507, 523-24 (App. Div. 2010), rev'd on other grounds, 211 N.J. 454 (2012).

---

[9]  As discussed herein, we affirm the dismissal of the negligence claim as to the updated valuation.

Under Rule 4:46-2(c), summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

"Collateral estoppel, also known as issue preclusion, prohibits re[-]litigation of issues if its five essential elements are met." Adelman v. BSI Fin. Servs., Inc., 453 N.J. Super. 31, 40 (App. Div. 2018). The five elements are:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Ibid. (quoting Allen v. V & A Bros., Inc., 208 N.J. 114, 137 (2011)).]

We conclude the trial court correctly applied collateral estoppel in granting summary judgment as to Pennetti's claim that Zeigler committed legal malpractice in filing the modification motion.

First, the trial court determined that Zeigler's September 2018 motion was not a motion to modify, but instead a motion that merely sought to change the timing of payments. Therefore, any suggestion that the Zeigler motion was insufficiently supported to provide for modification or relief from the anti-Lepis clause is of no moment.

Moreover, the actual motion that sought modification and relief from the anti-Lepis clause was the cross-motion filed by the Whitman law firm, in response to the ex-husband's motion to enforce. Therefore, to the extent Pennetti contended that the modification motion was insufficiently supported, Zeigler was entitled to summary judgment because she did not file the modification motion.

Nonetheless, after we determined Zeigler failed to establish sufficient changed circumstances to warrant modification, even discounting the anti-Lepis clause, collateral estoppel barred Pennetti's claim that Zeigler was negligent regarding the modification motion, because we deemed the provision of the anti-Lepis clause in the parties' settlement agreement was irrelevant.

In other words: (1) it was already determined Pennetti failed to meet the standard for modification and the anti-Lepis clause was not relevant to that determination; (2) those issues were actually litigated in court; (3) the court issued a final judgment on the merits; (4) the determination of the issues were essential to the prior judgment; and (5) the party against whom the doctrine was asserted, Pennetti, was a party in the earlier proceeding. See Adelman, 453 N.J. Super. at 40. Therefore, collateral estoppel was properly applied and Zeigler was entitled to summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1680-23